FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 18, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 1:17-CR-02015-EFS-1 |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTION FOR NEW TRIAL** |
| JOHNNY ANDRES ASUNCION, III, | |
| Defendant. | |

On November 13, 2017, the Court commenced jury trial in this matter. ECF No. 74. On November 16, 2017, the jury returned a guilty verdict. ECF No. 82. Before the Court is Defendant Johnny Andres Asuncion, III's Motion for New Trial, ECF No. 85. Having thoroughly considered the parties' briefing and the record, the Court finds oral argument to be unnecessary. For the following reasons, the Court denies Mr. Asuncion's Motion.

## I. APPLICABLE LAW

Under Federal Rule of Criminal Procedure 33, a court may grant a motion for new trial if "the interest of justice so requires." District courts have broad discretion in deciding whether to grant or deny a new trial. *See United States v. Steel*, 759 F.2d 706 (9th Cir. 1985). Nonetheless, new trials are granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Pimentel*, 654 F.2d 538, 545 (9th Cir. 1981).

ORDER DENYING NEW TRIAL - 1

## II.    DEPUTY PEPPER'S TESTIMONY

During trial, near the beginning of the Government's case, Deputy Pepper testified that he was performing surveillance in an effort to arrest Mr. Asuncion on a federal probation warrant. Deputy Pepper further testified that based on information he had received, he had set up surveillance at a certain residence in Selah and was looking for "Johnny Asuncion, a black passenger vehicle, and a black case that he would be carrying with him."[1]  Mr. Asuncion's first argument is that "Deputy Pepper's testimony made it appear as if the black case was connected somehow to the federal warrant," and that this caused him prejudice. *See* ECF No. 85 at 3.

Unbeknownst to the jury, Deputy Pepper had received information from an informant that Mr. Asuncion was at the Selah residence, driving a black Cadillac, and carrying a black case with drugs inside. *See* ECF No. 62 at 2.  Rather than seeking to introduce such hearsay statements — and in compliance with the Court's order, ECF No. 76[2] — the Government carefully directed Deputy Pepper to explain only what he was looking for while surveilling the Selah residence.  Thus, the Cadillac and black case served as identifiers of Mr. Asuncion, akin to

---

[1]  Quotations and citations to the trial proceedings are taken from a preliminary transcript provided by the Court Reporter.  Neither party requested an official trial transcript.

[2]  In addressing Mr. Asuncion's related motion in limine before trial, the Court ruled as follows:

[T]he Government may elicit testimony that an agent "received information from a source, and that based on this information the agent conducted surveillance at a specific location and was looking for Defendant, in a dark Cadillac, carrying a suitcase." The Government is cautioned to refrain from arguing, or eliciting testimony, that Defendant is more likely to have possessed the briefcase — or the methamphetamine therein — because a confidential informant said as much."

ECF No. 76 at 4.

describing someone as "wearing a leather jacket" or "holding a green umbrella." *See* Fed. R. Evid. 801(c) (limiting prohibition against hearsay to statements "offered to prove the truth of the matter asserted"). Further, by telling the jury that he was on the lookout for those identifiers, Deputy Pepper was explaining to the jury why those particular facts stood out to him as being noteworthy.

Contrary to Mr. Asuncion's arguments, Deputy Pepper's testimony did not suggest there was any connection between the black case and the federal arrest warrant. The Government's arguments likewise made no connection between the warrant and the black case.[3] Moreover, even if the jury somehow incorrectly inferred from Deputy Pepper's testimony that the black case was linked to the federal warrant, Mr. Asuncion does not show how this caused him any prejudice — let alone why justice requires a new trial. *See Pimentel*, 654 F.2d at 545 (reasoning that new trials are appropriate only in "exceptional cases").

### III. <u>TEXT MESSAGES</u>

During trial, the Government presented the jury with evidence of text-messages found on a phone linked to Mr. Asuncion. The first group of text messages consisted of an exchange between Mr. Asuncion and someone named Kandi, as summarized below:

---

[3] In closing, the Government stated as follows:
>  Deputy Pepper . . . told you that on February 9th of this year he was assigned to look for the defendant because there was an outstanding warrant for the defendant's arrest. And based on some information he received, he went to a specific house in Selah, and he told you that he was looking at that house for the defendant, he was looking for a black car, and he was looking for a black case . . . ."

ORDER DENYING NEW TRIAL - 3

```
 1      Incoming:  This is Kandi look I'm not trying to kick it or be
                   ur friend I'm just trying to get some dope can u
 2                 hook me up or no I got money
        Outgoing:  Yes how much
 3      Incoming:  A ball
        Incoming:  I don't have a ride tho
 4      Outgoing:  Where you at
        Incoming:  On nobhill across from the dollar store
 5      Incoming:  R u coming ?
        Incoming:  Hello
 6      Outgoing:  On way
        Incoming:  I already got some thanks tho unless u wanna front
 7                 me til Thursday
        Incoming:  Aye it's Kandi can I get something er what?
 8      Outgoing:  Like what
        Incoming:  Ball lol
 9  See Government's Exhibit 15 (errors in original) (emphasis added).

10      The    Government    likewise    introduced    a    similar    text-message

11  exchange between Mr. Asuncion and someone named Brasker:

12      Incoming:  Bro I need oz shit
        Incoming:  There's a bracelet and ring here if your interested
13                 plus I need a oz weed
        Outgoing:  K
14      Incoming:  Ok
        Incoming:  This girl is the one with the jewelry its pretty
15                 nice
        Outgoing:  How much
16      Incoming:  She just wants some shit she said haha
        Incoming:  Bro I need to ozs of shit i got some one coming
17                 from out of town
        Incoming:  What happened.  Bro
18      Outgoing:  To many cops
        Outgoing:  U still want
19      Incoming:  How much best deal u can do 2 ounces smoke and qtr
                   oz new shit
20      Outgoing:  225$
        Incoming:  Ok I got $180 till later today
21      Incoming:  Is that cool
        Outgoing:  K
22      Incoming:  Ru coming back bro
        Incoming:  Cop has someone pulled over across the street
23      Incoming:  I need to get some shot to qtr oz then another qtr
                   oz in a bit plus the smoke
24      Incoming:  I can come there in bu myself I need shit and weed
        Incoming:  Ha I need oz weed and qtr oz
25      Incoming:  Shit
        Outgoing:  In selah be over soon u need weed
26      Incoming:  Ya I have enough for one oz smoke qtr oz shit
```

```
 1     Incoming:  Then I'm going to need another oz weed and qtr oz
                  shit later yoday
 2     Incoming:  I need another qtr
       Incoming:  Oz
 3     **Outgoing:  K**
```

4   *See* Government's Exhibit 16 (errors in original) (emphasis added).

5        According to Mr. Asuncion, the Court should not have admitted

6   the above text messages into evidence.  Mr. Asuncion argues that "his

7   statements or responses in the texts were a mere pretext to

8   consideration of the incoming texts from Kandi and Brasker, and for

9   the truth of the matter asserted." ECF No. 85 at 5.  At trial,

10  however, the Government introduced sufficient evidence to show that

11  Mr. Asuncion authored the bold outgoing text messages, meaning they

12  constituted party admissions.  As is common with responsive

13  statements, the bolded texts lack meaning without understanding what

14  gave rise to them in the first place; statements such as "K" or "U

15  still want" will have wholly different meanings depending on what

16  preceded and prompted them.  Thus, the incoming texts were admitted,

17  not to prove the truth of those particular texts' content, but rather

18  to inform the meaning of Mr. Asuncion's responses.

19       Despite Mr. Asuncion's claims otherwise, the disputed text

20  messages were not admitted to show "that Mr. Asuncion was approached

21  by at least two separate people seeking to buy drugs from him." *See*

22  ECF No. 85 at 4.  Instead, they were used to show that Mr. Asuncion

23  made statements agreeing to sell drugs to two separate people.

24  Accordingly, the Court finds it did not err in admitting the text

25  messages and their admission does not weigh in favor of granting a new

26  trial.

ORDER DENYING NEW TRIAL - 5

# IV.    PRIOR CONVICTION

Near the end of trial, the Court allowed the Government to present evidence showing that Mr. Asuncion was convicted in 2007 for distributing over an ounce of methamphetamine in 2006.  When the Court admitted the prior-conviction evidence, it gave a limiting instruction pursuant to Federal Rule of Evidence 105, telling the jury to consider the evidence only for its bearing on Mr. Asuncion's "intent, opportunity, plan, knowledge, and/or absence of mistake and for no other purpose." *See* Fed. R. Evid. 404(b); *see also* Jury Instruction No. 14, ECF No. 78 at 15. Additionally, during closing arguments, the Government itself emphasized the limited role of such evidence and explained why it tended to show both knowledge and intent:

> The fact of the defendant's prior conviction is relevant in understanding his knowledge and his intent to distribute. It is not character evidence.  What does that mean?  That means that you don't use that evidence of his prior conviction to think, well, he did it in the past, he must be doing it again.  The law does not allow that.  And if you find your mind trying to think of that evidence in that way, please stop.  But that his prior conviction is relevant for this reason:  When he looked in the black case and he saw the bags of the white crystals, there's no mistake that that's some kind of bath salt.  He knows it's methamphetamine.  How does he know it's methamphetamine? Because he has sold methamphetamine before.  It's also relevant to prove his intent to distribute.  . . . [I]n 2006 when defendant was convicted he had sold one ounce of methamphetamine.   That   shows   that   an   ounce   is   a distributable amount.  Well this was 756 grams, . . . it's 32 times what he had distributed in the past so clearly [an] amount for distribution.

In his Motion, Mr. Asuncion, argues that the jury should never have learned about his 2007 conviction. *See* ECF No. 85 at 6.   Mr. Asuncion made similar arguments previously, which the Court rejected. *See* ECF No. 62.   Before trial, the Court ruled that the Government

could introduce the prior conviction to prove something other than Mr. Asuncion's criminal propensity, "such as motive, intent, knowledge, or absence of mistake."[4] ECF No. 62 at 19 (citing Fed. R. Evid. 404(b)(2)). After all, the Government was entitled to introduce evidence — so long as it was otherwise admissible — if it tended to show knowledge or intent, even if Mr. Asuncion did not raise those issues in his defense. *See United States v. Mayans*, 17 F.3d 1174, 1182 (9th Cir. 1994) (reasoning that knowledge and intent are material issues, which the government must prove, regardless of whether those issues are disputed by the defendant).

Mr. Asuncion's prior conviction showed that he was familiar with the methamphetamine trade and knew how it was generally stored, transported, and sold. Especially given the testimony at trial that Mr. Asuncion was seen handling the black case and even admitted that he "may have looked in the [case]," his prior conviction was evidence of knowledge. Further, the prior-conviction evidence suggested Mr. Asuncion had the requisite intent, as it suggested that he knew that the amount of methamphetamine in the black case went far beyond a personal-use amount. *See* Fed. R. Evid. 401.

---

[4] In its prior order, ECF No. 62, the Court ruled that the 2007 conviction was admissible after analyzing it under the applicable four-part test:
> Such evidence may be admitted if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) (in certain cases) the act is similar to the offense charged.

*United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012) (quoting *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002)). The Court also determined that, under Rule 403, the probative value was not substantially outweighed by any prejudicial impact. *See* ECF No. 62 at 20.

ORDER DENYING NEW TRIAL - 7

1  The Court therefore finds the evidence of Mr. Asuncion's 2007
2  prior conviction was properly admitted.  Given both the Court's
3  limiting instruction and the manner in which the Government used the
4  evidence, the Court further finds any prejudicial impact did not
5  outweigh the probative value of Mr. Asuncion's 2007 conviction. *See*
6  Fed. R. Evid. 403.  The admission of evidence relating to Mr.
7  Asuncion's prior conviction for distributing methamphetamine does not
8  weigh in favor of a new trial.

### V.  CONCLUSION

10  The Court finds that it properly admitted Deputy Pepper's
11 testimony, the text messages from Kandi and Brasker, and limited
12 evidence regarding Mr. Asuncion's 2007 conviction.  Moreover, even
13 assuming arguendo that one or more of these evidentiary rulings did
14 constitute error, Mr. Asuncion suffered no substantial prejudice as a
15 result of those rulings. *See* Fed. R. Crim. P. 33.  The jury's verdict
16 was supported by the weight of the evidence and the interest of
17 justice does not require a new trial. *Id.; see also Pimentel*, 654 F.2d
18 at 545.

19  Accordingly, **IT IS HEREBY ORDERED**:

20  **1.**  Defendant's Motion for New Trial, **ECF No. 85**, is **DENIED**.

21 //////

22 /////

23 ////

24 ///

25 //

26 /

ORDER DENYING NEW TRIAL - 8

1    **2.**    As Defendant has already obtained the Rule 17(c) subpoena

2         requested therein, Defendant's Ex Parte Motion, **ECF No. 70**,

3         is **DENIED AS MOOT**.

4    **IT IS SO ORDERED.**    The Clerk's Office is directed to enter this

5  Order and provide copies to all counsel.

6    **DATED** this  _18th _  day of January 2018.

7

                    s/Edward F. Shea _
8                   EDWARD F. SHEA
             Senior United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26